## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Fei Zhang, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:23-cv-16011 |
| v. | ) | |
| | ) | Dist. Judge |
| JPFreepe, | ) | |
| | ) | Mag. Judge |
| Defendant, | ) | |

### Complaint

**NOW COMES** Fei Zhang ("Plaintiff"), by and through its undersigned counsel, and hereby brings this Complaint against JPFreepe ("Defendant") and alleges as follows:

### Nature of the Action

1. This action has been filed by Plaintiff to combat the e-commerce store operated by Defendant who trade upon Plaintiff's intellectual property by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products which infringe Plaintiff's patented design (the "Infringing Products").

2. Defendant created a fully interactive, commercial Internet stores operating under at least the online marketplace account identified as JPFreepe (the "Defendant Online Store") which is intentionally designed to appear to be selling genuine Plaintiff products, while actually selling the Infringing Products to unknowing consumers.

3. Defendant attempts to avoid liability by going to great lengths to conceal both its identity and the full scope and interworking of their infringing operation.  Plaintiff is forced to file this action to combat Defendant's unauthorized use of Plaintiff's patented design U.S. Patent No. D889,403 (the "Plaintiff Design"), as well as to protect unknowing consumers from purchasing

unauthorized products over the Internet. A true and correct copy of the United States Patent for the Plaintiff Design is attached hereto as **Exhibit 1**.

4. Plaintiff has been and continues to be irreparably damaged through consumer confusion and the infringement of the Plaintiff Design as a result of Defendant's actions and accordingly seeks injunctive and monetary relief.

**Jurisdiction and Venue**

5. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1338 (for claims arising under the U.S. Patent Act).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant since Defendant directly targets business activities toward consumers in the United States, including Illinois and this Judicial District. Defendant reaches out to do business with residents of Illinois and this Judicial District by operating one or more commercial, fully-interactive Defendant Online Stores through which residents of Illinois and this Judicial District can purchase and/or have purchased products being offered and sold that infringe directly and/or indirectly the Plaintiff Design. Defendant has targeted sales from residents of Illinois and this Judicial District by operating a Defendant Online store that accepts payment in U.S. dollars, offered shipping to addresses within Illinois and this Judicial District products that infringe directly and/or indirectly the Plaintiff Design, and has shipped or offered to ship Infringing Products into this Judicial District. Defendant has committed and is committing tortious acts in Illinois and this Judicial District, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

**Parties**

8. Plaintiff is engaged in the design, distribution, marketing, offering for sale, and sale of various consumer products, including, *inter alia*, wireless chargers (collectively, the "Plaintiff Products").

9. The Plaintiff Products are distributed and sold to consumers throughout the United States, including in Illinois and in this Judicial District.

10. The Plaintiff Products are known for their distinctive patented designs. These designs are broadly recognized by consumers. Products tailored after these designs are associated with the quality and innovation that the public has come to expect from Plaintiff Products. Plaintiff uses these designs in connection with its Plaintiff Products including, but not limited to, the following patented design, herein referred to as the "Plaintiff Design."

| Claim |
|:---:|





FIG. 5

FIG. 6

FIG. 7

FIG. 8

**11.** Plaintiff is a lawful owner and assignee of all rights, title, and interest in and to the Plaintiff Design. U.S. Patent No. D889,403 was lawfully issued on July 7, 2020, with named inventors Fei Zhang and Songzhen Li. **Exhibit 1**.

**12.** Defendant is an individual and/or business entity who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendant conducts business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive Defendant Online Store which operate on

commercial online marketplaces. Defendant targets the United States, including Illinois and this Judicial District, and has offered to sell and, on information and belief, has sold and continues to sell Infringing Products to consumers within the United States, including the State of Illinois and this Judicial District.

**Defendant's Unlawful Conduct**

13. Marketplaces like Temu, among others, allow merchants to quickly "set up shop" and flood the market with unauthorized goods which displace actual sales manufacturers would otherwise enjoy.

14. It has been estimated that e-commerce intellectual property infringement costs merchants in the U.S. alone nearly $41 billion[1] with Department of Homeland Security seizures of infringing goods increasing more than 10-fold between 2000 and 2018[2] and a street value of seized goods increasing 246% from 2017 to 2022.[3]

15. U.S. Customs and Border Protection ("CBP") reported that for Fiscal Year 2019, 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large cargo containers) and 85% of CBP seizures originated from mainland China, Singapore, and Hong Kong.[4]

---

[1] The National Bureau of Asian Research, The Report of the Commission on the Theft of American Intellectual Property, at 9, Pub. The Commission on the Theft of American Intellectual Property 2017, available at http://www.ipcommission.org/report/IP_Commission_Report_Update_2017.pdf.
[2] U.S. Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, January 24, 2020.
[3] U.S. Customs and Border Protection Office of Trade, FY 2022 Fact Sheet Intellectual Property Rights, available at https://www.cbp.gov/sites/default/files/assets/documents/2023-Mar/IPR%20Fact%20Sheet%20FY2022%20Final%20Draft%20%28508%29%20%28004%29%20%282%29.pdf
[4] U.S. Customs and Border Protection Office of Trade, Intellectual Property Rights Fiscal Year 2019 Seizure Statistics, available at, https://www.cbp.gov/sites/default/files/assets/documents/2020-Sep/FY%202019%20IPR%20Statistics%20Book%20%28Final%29.pdf.

16. Legislation was recently introduced in the U.S. Senate that would allow CBP to seize articles that infringe design patents, thus closing a loophole currently exploited by infringers.[5]

17. Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

18. Third party service providers like those used by Defendant do not robustly subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[6]

19. DHS has observed that "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts.[7]

20. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.[8]

21. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]."[9]

---

[5] Press Release, U.S. Senator Thom Tillis, Tillis, Coons, Cassidy & Hirono Introduce Bipartisan Legislation to Seize Counterfeit Products and Protect American Consumers and Businesses (Dec. 5, 2019).
[6] Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).
[7] *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, at p. 22.
[8] Id., at p. 39.
[9] *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. at 186-187.

22. The success of Plaintiff's sales of the Plaintiff Product has resulted in substantial infringing activity and other attempts to misappropriate Plaintiff's proprietary rights. Plaintiff has policed the use of its Plaintiff Design and has identified certain online product listings on marketplaces such as Temu offering for sale and, on information and belief, selling products to consumers that directly and/or indirectly infringe the Plaintiff Design throughout the United States including this Judicial District.

23. Defendant created a fully interactive, commercial internet stores operating under at least the online marketplace "JPFreepe". True and correct screenshots of Defendant's Temu.com storefront attached hereto as **Exhibit 2**.

24. Defendant enables and facilitates sales of their Infringing Products with unauthorized products that directly and/or indirectly infringe the Plaintiff Design by presenting the Defendant Online Store as a legitimate reseller using standardized product listing layouts and terminology. On information and belief, Plaintiff nor Songzhen Li has not licensed or authorized Defendant to use its Plaintiff Design in any way, and Defendant is not an authorized retailer of genuine Plaintiff Products.

25. Defendant deceives unknowing consumers, namely, by including the Infringing Products prominently in the product pictures, including as the first picture. **Exhibit 2**.

26. Defendant takes pain to conceal its identity from the public, using a meaningless store name and omitting any contact information. **Exhibit 2**. Defendant may operate several stores simultaneously, using fictitious identities such as that shown in **Exhibit 2**, as well as other fictitious names and addresses. Moreover, infringers like Defendant will often register new store accounts under new fictitious names when they receive notice that one or more stores have been the subject of a lawsuit. The use of these store registration schemes is one of several ways in

which Defendant, to avoid being shut down, conceal their true identities and the inner workings of their infringement operations.

27. Infringers like Defendant will typically ship infringing products in small quantities via international mail to mitigate detection by U.S. Customs and Border Protection. Further, they will typically operate multiple credit card merchant accounts or use layers of payment gateways to forestall their cashflow being interrupted due to patent enforcement efforts. On information and belief, Defendant utilizes offshore bank accounts and routinely move funds from U.S.-based merchant accounts (*e.g.*, within China) outside the jurisdiction of this Court.

28. Defendant, without any authorization or license from Plaintiff, has knowingly and willfully offered for sale, sold, and/or imported into the United States and into Illinois products that infringe directly and/or indirectly the Plaintiff Design. **Exhibit 3**.

29. Defendant's infringement of the Plaintiff Design was willful.

30. Defendant's infringement of the Plaintiff Design in connection with the making, using, offering for sale, selling, and/or importing into the United States for use of the Infringing Products, including the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Infringing Products into Illinois, including this judicial district, is irreparably harming Plaintiff.

## Count I - Patent Infringement (25 U.S.C. § 271)

31. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 31.

32. Defendant is making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe, directly and/or indirectly, the ornamental design claimed in Plaintiff's U.S. Patent No. D889,403.

33. Defendant has infringed Plaintiff's U.S. Patent No. D889,403 through the aforesaid acts and will

continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

34. Plaintiff is entitled to recover damages adequate to compensate for the infringement, including Defendant's profits pursuant to 35 U.S.C. § 289. Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

**WHEREFORE**, Plaintiff, Fei Zhang, prays for judgment against Defendant as follows:

A. That Defendant, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be permanently enjoined and restrained from:

    a. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiff and that include any reproduction, copy or colorable imitation of the designs claimed in the Plaintiff Design;

    b. aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the Plaintiff Design; and

    c. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b).

B. Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Temu, eBay, AliExpress, Alibaba, Amazon, Wish.com, Joom, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of goods that infringe the ornamental designs claimed in the Plaintiff Design;

**C.** That Plaintiff be awarded such damages as it shall prove at trial against Defendant that are adequate to compensate Plaintiff for Defendant's infringement of the Plaintiff Design, but in no event less than a reasonable royalty for the use made of the inventions by the Defendant, together with interest and costs, pursuant to 35 U.S.C. § 284;

**D.** That the amount of damages awarded to Plaintiff to compensate it for infringement of the Plaintiff Design be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

**E.** In the alternative, that Plaintiff be awarded all profits realized by Defendant from their infringement of the Plaintiff Design, pursuant to 35 U.S.C. § 289;

**F.** That Plaintiff be awarded its reasonable attorneys' fees and costs; and

**G.** Award any and all other relief that this Court deems just and proper.

Dated this November 16, 2023

Respectfully Submitted,

/s/Adam E. Urbanczyk
Adam E. Urbanczyk
AU LLC
444 W. Lake St. 17th Floor
Chicago, IL 60606
(312) 715-7312
adamu@au-llc.com
*Counsel for Plaintiff*